Joshua L. Seifert (SBN 296399)
jseifert@seifertpllc.com
Joshua L. Seifert PLLC
251 South Lake Avenue
Pasadena, California 91101
Tel: 646.470.2746

*Attorney for Plaintiff George Robertson,*
 *and on behalf of Rhude Designs, LLC,*
 *and RVRG Holdings, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE ROBERTSON, an individual; RHUDE DESIGNS, LLC, a California limited liability company; RVRG HOLDINGS LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> RHUIGI VILLASEÑOR, an individual; RMV GROUP, LLC, a California limited liability company; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 2:23-cv-04622 <br><br> **COMPLAINT; DEMAND FOR JURY TRIAL** |

Plaintiff George Robertson ("Robertson"), on his own behalf and derivatively on behalf of Rhude Designs, LLC ("RD"), and RVRG Holdings LLC ("Holdings," and, together with RD, the "Rhude Companies"), brings the following Complaint (the "Complaint") against Rhuigi Villaseñor ("Rhuigi" or "Villaseñor"), RMV Group, LLC ("RMV"), and certain as yet unknown "Doe" co-conspirators (Villaseñor, RMV, and Does, collectively, "Defendants"):

## NATURE OF THE ACTION

1.      This is a direct and derivative action in both law and equity for breach of contract, breach of fiduciary duty, fraud, conversion, and trademark infringement and misappropriation.

2.      Robertson and Villaseñor began collaborating in 2016 to build the RHUDE clothing brand. The brand quickly found widespread acclaim for its designs that balanced luxury with streetwear elements, from pieces that alluded to the Marlboro logo to "traxedo" pants that combined track pants styling with high-end finishes.

3.      Robertson and Villaseñor collaborated on the creative direction of the brand. In fact, Robertson designed the traxedo pants that brought RHUDE into the mainstream and drove the majority of its sales in 2018, in addition to the RHUDE basketball sneaker, sunglasses, hats, socks, and shorts.

4.      Their relationship began to sour in 2019, when Villaseñor sought greater control and hoped to diminish Robertson's role and eliminate his creative input. Villaseñor repeatedly told colleagues and other members of the fashion industry that the RHUDE looked "too much like George."

5.      Villaseñor's improperly attempted to dilute Robertson's interests and took steps to freeze Robertson out of the Rhude Companies.

6.      Then Villaseñor began keeping all of the Rhude Companies' profits for himself. Though the Rhude Companies revenue has skyrocketed from 2019 to present, Robertson's have not. Meanwhile, Villaseñor's lavish lifestyle is the subject of extensive media coverage.

7.      Upon information and belief, Villaseñor has been pilfering the Rhude Companies' coffers to support that lavish lifestyle. He has taken advantage of his power and control over the Rhude Companies' products, designs, bank accounts, and financial records to enrich himself to Robertson's detriment.

8.      Villaseñor has diverted RHUDE sale proceeds from the Rhude Companies into his personal limited liability company, RMV. Those funds then go directly

into his own pocket.

9.      Upon information and belief, Villaseñor has used the Rhude Companies' employees and resources for his personal ventures.

10.     Upon information and belief, Villaseñor even began infringing upon and diluting the Rhude Companies' trademarks. For example, he entered into a collaboration with Zara, designing clothes emblazoned with the letters "RHU."

11.     Not only was the "RHU" branding originally developed by RD for RHUDE, but Villaseñor is also improperly personally capitalizing on the "RHUDE" trademark and goodwill owned and developed by the Rhude Companies.

12.     Because of Villaseñor's repeated breaches, misappropriation, and misconduct, Robertson brings this Complaint on behalf of himself and the Rhude Companies derivatively. He seeks, among other things, compensatory damages, treble damages under California Penal Code § 496, punitive damages, and the removal of Villaseñor from his managerial position in the Rhude Companies.

## PARTIES

13.     Robertson is an individual residing in the County of Los Angeles. He has been a manager and member of the Rhude Companies since 2016 and continues to be a manager and member.

14.     Upon information and belief, RD is a California limited liability company with its principal place of business in the County of Los Angeles.

15.     Upon information and belief, Holdings is a California limited liability company with its principal place of business in the County of Los Angeles.

16.     Upon information and belief, Defendant Villaseñor is an individual residing in the County of Los Angeles. Villaseñor has been a manager and member of the Rhude Companies since 2016 and continues to be a manager and member.

17.     Upon information and belief, Defendant RMV is a California limited liability company with its principal place of business in the County of Los Angeles

18.     Upon information and belief, the defendants sued as Does 1 through 10

inclusive are also legally responsible for the conduct alleged herein. Currently, Robertson does not know their names, capacities, relationships, or the extent of their participation. Robertson will amend this Complaint to allege the relevant facts when ascertained.

19.     Robertson is informed and believes, and on that basis alleges, that except as otherwise alleged herein, each Defendant is and at all times relevant to this Complaint was, the employee, agent, employer, partner, joint venturer, alter ego, affiliate, and/or co-conspirator of the other Defendants and, in doing the acts alleged herein, was acting within the course and scope of such position at the direction of, and/or with the permission, knowledge, consent, and/or ratification of the other Defendants. In the alternative, Robertson is informed and believes, and based thereon alleges, that each Defendant, through its acts and omissions, is responsible for the wrongdoing alleged herein and for the damages suffered by Robertson.

## JURISDICTION AND VENUE

20.     This Court has personal jurisdiction over Defendant Villaseñor because he is a resident of California.

21.     This Court has personal jurisdiction over Defendants RD and Holdings because their principal place of business is in California.

22.     Personal jurisdiction is also proper because Defendants consented to the sole and exclusive jurisdiction of the federal and state courts of California in connection with various agreements with Robertson related to this dispute.

23.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(b).

24.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because so the state law claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the

parties consented to jurisdiction of the federal and state courts of California.

## FACTUAL ALLEGATIONS

### I.      Robertson and Villaseñor Partner to Build the RHUDE Brand

26.     In 2015, Villaseñor began developing RHUDE, a luxury ready-to-wear brand.

27.     As the brand gained traction, Villaseñor needed a partner to take the company to the next level.

28.     In 2016, Villaseñor and Robertson, a well-known music agent and fashion entrepreneur, agreed to work together. Robertson made a capital investment and contributed his personal good will and contracts, which allowed RHUDE to capitalize on Robertson's industry connections.

29.     At the end of 2016, Robertson invested $50,000 to develop the brand.

30.     On November 20, 2018, the parties entered the Amended and Restated Operating Agreements related to RD and Holdings. Attached hereto as Exhibits 1 and 2 are true and correct copies of the Amended and Restated LLC Agreements of RD, and Holdings, respectively (together, the "Operating Agreements").

31.     Pursuant to the Operating Agreements, Robertson owned 20% of the Rhude Companies and Villaseñor owned the remaining 80%.

32.     Robertson and Villaseñor shared managerial authority.

33.     Holdings owned, among other things, all intellectual property related to RHUDE.

34.     The RHUDE trademark was registered in January 2018, and is owned by Holdings.

35.     RD was the licensee of, among other things, all intellectual property related to RHUDE, including the RHUDE trademark.

36.     Under the Operating Agreements, "'Available Cash' means the amount of cash held by Company, less: (i) all current liabilities of Company; and (ii) reasonable working capital and other amounts that Manager deems advisable or necessary for

the operation of the business of Company, including amounts that Manager deems advisable or necessary to place into reserves for (a) customary and usual claims and costs, (b) contingent liabilities, and (c) anticipated expenditures, including, without limitation, distributions pursuant to Section 4.11."

37.     Pursuant to Section 4.6 of each Operating Agreement, all Available Cash must be distributed to the members based upon their percentage interests.

38.     Section 5.4 of each Operating Agreement is titled "Removal." Those provisions provide, among other things, that if a Manager has "willfully and materially breached this Agreement and failed to cure such breach within thirty (30) days following written notice thereof" or "committed any act or omission constituting fraud, embezzlement, or misappropriation," such Manager may be removed.

39.     If a Manager is removed, the other Manager shall designate the replacement.

## II.     RHUDE Becomes a Huge Success

40.     After Robertson came on board, he and Villaseñor quickly turned RHUDE into a worldwide success.

41.     RHUDE rose to fame on designs that balanced luxury with streetwear elements, from pieces that incorporated allusions to the Marlboro logo to "traxedo" pants that combined track pants styling with luxury finishes.

42.     Both Robertson and Villaseñor contributed designs to their project. In fact, Robertson was responsible for the traxedo pants, which launched RHUDE into the mainstream.

43.     Indeed, the traxedo pants were responsible for RHUDE gaining recognition in the luxury fashion space, rather than being known merely as a t-shirt and hoodie sweatshirt brand. They were worn by celebrities such as Ellen Degeneres and A$AP Rocky:

//

//

 

44.     Robertson was also responsible for the designs of the RHUDE basketball sneaker, Rhude x Theirry Lasry sunglasses, and RHUDE shorts.

45.     RHUDE had collaborations with a number of brands, including Puma, Vans, Lamborghini, and Maclaren.

46.     The majority of RHUDE's designs were emblazoned with various iterations of RHUDE, from "R" to "RH" to "RHUDE" as in the following examples:

  

47.     In November 2018, Villaseñor told Forbes the company had been profitable since 2017 and was expected to generate $12 million in revenue in 2018.

48.     According to Forbes, Villaseñor "had the most famous athletes and artists in the world wearing his clothes, his sales numbers were incredible and after our interview was done; I heard him on the phone ordering a Ferrari."

### III.     Villaseñor Grows Jealous of Robertson's Influence

49.     From 2016 through 2019, Robertson was responsible for most of RHUDE's fundamental business infrastructure decisions.

50.     He contributed his name, contacts, and credit across RHUDE's business

in the form of lease guarantees, credit cards, large personal cash advances, PayPal accounts, and other material aspects of RHUDE's business.

51. Robertson's relationship with Villaseñor began to deteriorate in 2019.

52. Robertson's influence over the brand began to bother Villaseñor. He grew jealous of the credit Robertson was receiving internally, and Robertson's control over the design team.

53. He was bothered by the fact that RHUDE was beginning to "look like George," and did not reflect his own vision.

54. He specifically disliked the fact that RHUDE was known primarily for Robertson's designs, such as the traxedo pants, basketball shorts, RHUDE Rhecess vintage basketball sneaker, and Rhude x Theirry Lasry sunglasses.

55. Once RHUDE had gained market traction and brand value (in large part due to the efforts, capital, and credit of Robertson), Villaseñor began to cut Robertson out of the business, at first gradually, then suddenly.

56. Villaseñor sought to eliminate Robertson's creative contributions to the brand, assert his own vision, and keep all profits for himself.

57. In mid-2020, Robertson was told that he should not come to the RHUDE offices anymore.

58. In January 2021, Villaseñor eliminated Robertson's access to company files.

59. On or about July 5, 2021, Villaseñor instructed his employees to terminate every rh-ude.com email account except those of six employees and his own.

60. Villaseñor then expressed his intention to dilute Robertson's investments in the Rhude Companies.

61. But Villaseñor soon realized that the Rhude Companies' Operating Agreements prohibited him from unilaterally diluting Robertson's interests.

62. Instead, in October 2021, Villaseñor offered to buy Robertson's 20% for $5,000,000, implying an overall valuation of RHUDE of $25,000,000.

63.     Those negotiations faltered, and Robertson retained his interests.

64.     Robertson has retained his interests to this day.

**IV.    Villaseñor's Coffers Overflow, but Robertson's Distributions Stagnate**

65.     In 2018, 2020, 2021, and 2022, RHUDE's revenue reportedly went from $12 million, to $30 million, "over 30 million," and then to $50 million.

66.     Villaseñor told GQ that RHUDE generated $30 million in revenue in 2020.

67.     In September 2022, a profile on Villaseñor in the Business of Fashion reported that RHUDE was expected to generate $50 million in revenue in 2022.

68.     That same month, Villaseñor boasted to British GQ that, because of RHUDE's success, "Family's all set now."

69.     Meanwhile, Robertson's share of the income and distributions have not increased in accordance with RHUDE's increased revenue.

70.     While RD's income nearly doubled between 2020 and 2021, Robertson's share of the income as reported on RD's tax returns actually decreased from $322,156 in 2020 to $269,058 in 2021.

71.     Moreover, Robertson's actual distributions from RD were just $41,657 in 2020 and $100,000 in 2021.

72.     In contrast to Robertson's distributions, Villaseñor's public persona suggests millions of dollars are being diverted into his own pockets.

73.     British GQ recently Villaseñor is "a self-described cigar connoisseur, he collects racecars, wines and grail-level watches."

74.     His lavish exploits—private jets, Ferraris and Lamborghinis, a home in the Hollywood Hills, extended stays in Italian villas, and a watch collection that includes several pieces worth more than $100,000—are splashed across traditional and social media.

75.     Upon information and belief, Robertson's distributions did not increase as they should have because Villaseñor was improperly accounting for his personal

expenditures as business expenses, wrongfully diverting RHUDE sales into his own pockets, misappropriating RD's resources for his personal ventures, and misappropriating and diluting the RHUDE trademark.

**V.    Villaseñor Diverts RD's Income to Himself**

76.    Upon information and belief, Villaseñor consistently diverts what should be RD income to himself.

77.    Upon information and belief, Villaseñor has improperly charged RD for many of his personal expenses.

78.    These improper charges can be derived from, among other things, RD's tax returns.

79.    RD's revenue figures on its tax returns do not come close to matching Villaseñor public statements.

80.    Though Villaseñor publicly stated RHUDE's revenue in 2020 was $30 million and in 2021 was "over $30 million," RD's tax returns reflect revenue of $10 million in 2020 and $18 million in 2021.

81.    Upon information and belief, this vast discrepancy is partly explained by Villaseñor's illicit diversion of RHUDE revenue directly into his own pockets.

82.    Furthermore, Villaseñor has abused his position of power by causing RD to spend lavishly—and irresponsibly—on "advertising."

83.    In the fashion industry, advertising spending is typically 5% of revenue.

84.    In 2020, when RD's tax returns reflected revenue of $10 million, they reflected "advertising" expenditures of $2.7 million. That is to say, Villaseñor caused RD to spend roughly 27% of its revenue on advertising.

85.    In 2021, when RD's tax returns reflected income of $18 million, they also reflected "advertising" expenditures of $5.4 million, *i.e.*, 30% of revenue.

86.    Upon information and belief, these "advertising" expenses are bloated because, among other things, Villaseñor charges his personal expenses to RD.

87.    Upon information and belief, those improperly charged personal expens-

es relate to, among other things, lavish travel and lodging, cars, wine, spirits, and watches.

88.    Upon information and belief, Villaseñor has also diverted RD profits into his personal limited liability company.

89.    On or about March 30, 2018, Villaseñor organized a personal business entity called RMV.

90.    Upon information and belief, Villaseñor routinely sold and continues to sell RD's goods to VIP clients—many of them NBA players, celebrities, and musicians—in private sales that directly benefit either RMV or Villaseñor himself, rather than RD.

91.    Upon information and belief, Villaseñor instructs the VIP clients to pay RMV or himself personally through his Paypal account.

92.    For example, on September 28, 2020, Villaseñor sold $15,331.50 worth of RHUDE products in a private, VIP sale.

93.    Though the sale involved RHUDE products, and though RD employees handled the sale, the sale was invoiced to RMV.

94.    Upon information and belief, the sale proceeds went to RMV, then directly into Villaseñor's pockets.

95.    Similarly, on or about May 1, 2021, Villaseñor sold RHUDE bomber jackets to a VIP client and instructed the client to remit payment to RMV's Paypal account, rather than RD's.

96.    Upon information and belief, the sale proceeds went directly into Villaseñor's pockets.

97.    Upon information and belief, there are dozens, if not hundreds, of similar transactions, whereby Villaseñor sold RD products to private clients, but the payment went to RMV or Villaseñor.

98.    Upon information and belief, hundreds of thousands, if not millions, went to RMV or Villaseñor, rather than RD.

## VI.    Villaseñor Misappropriates RD's Resources

99.    Villaseñor routinely misappropriates RD's resources for himself and his personal projects.

100.    Despite the fact that RMV was an entirely independent entity, Villaseñor used RD's resources for RMV's ventures.

101.    On or about October 11, 2021, Villaseñor purchased embroidery for a custom jumpsuit he designed for a private client and sold through RMV. But Villaseñor charged RD for the product costs.

102.    Upon information and belief, this happened on dozens of other occasions.

103.    Villaseñor also misappropriated RD's employees to work on projects that did not benefit RD.

104.    In or about May 2021, Villaseñor began a collaboration with Wiresonly, "a full service Automotive, Entertainment and Aviation company" for celebrities.

105.    The collaboration was known as "RH x Wiresonly."

106.    In May and June 2021, Villaseñor asked RD employees to work on the RH x Wiresonly production and designs even though they were not separately employed or compensated by Villaseñor or Wiresonly.

107.    The RH x Wiresonly production and designs involved the creation of dozens of designs ranging from socks to tee-shirts to shorts to varsity jackets.

108.    Upon information and belief, Villaseñor did not compensate RD for utilizing its resources in connection with RH x Wiresonly.

109.    Upon information and belief, Villaseñor wrongfully diverted all proceeds related to the collaboration to himself.

110.    As yet another example, in December 2021, Villaseñor and Puma went into a collaboration. Previously, RHUDE and Puma had collaborated. But the second collaboration was expressly a "Rhuigi x Puma partnership NOT Rhude."

111.    Despite the fact that the Rhuigi x Puma partnership was "NOT Rhude," RD's employees worked on the Rhuigi x Puma project during the course of their RD

**COMPLAINT**

employment.

112.   Upon information and belief, Villaseñor did not compensate RD for utilizing its resources in connection with Rhuigi x Puma.

113.   Upon information and belief, Villaseñor wrongfully diverted all proceeds related to the collaboration to himself.

**VII.   Villaseñor Misappropriates RD's Intellectual Property**

114.   Consistent with his efforts to wrongfully divert RD's assets and resources to himself, Villaseñor concocted an unlawful scheme to misappropriate and dilute the RHUDE trademark for his personal benefit.

115.   On March 1, 2021, Miles Talley of RD ("Talley") emailed Yvette and Jimmy Ponce of Next Label ("Next Label"). He attached "the artwork for 2 new woven labels we would like to develop for Rhude."

116.   The artwork for the labels simply had the letters "Rhu."

117.   On March 4, 2021, Next Label submitted a scanned sample of the design label to Talley for approval. Below is the design submitted by Next Label:



118.   Villaseñor then misappropriated the Rhu. label for his personal ventures.

119.   Upon information and belief, in or about July 2021, Villaseñor entered an agreement with Zara to collaborate on a line of clothing.

120.   Like the labels designed by RD, the Zara x Rhuigi clothes were branded "RHU."

121.   Though the "RHU" branding had been developed by RD's team and was

a deliberate reference to RHUDE, Villaseñor cut the Rhude Companies and Robertson out of the profits.

122.   Upon information and belief, the RHU products were designed with the specific intention of evoking the RHUDE brand and aesthetic:

  

123.   Upon information and belief, the RHU collaboration between Villaseñor and Zara was intended to, and actually did, capitalize on the RHUDE brand image and goodwill developed by Robertson and the Rhude Companies in the preceding seven years.

124.   Moreover, upon information and belief, RD employees created all the designs for the Zara collaboration in the course of their employment with RD.

125.   Despite the fact that the Rhude Companies owned the RHUDE trademark, and despite the fact that RD's employees worked on the RHU collaboration, the Rhude Companies did not receive any proceeds associated with the Zara x Rhuigi collaboration.

126.   Because of Villaseñor's misconduct, Robertson has similarly received no compensation from the Zara x Rhuigi collaboration.

**VIII.  Villaseñor Uses RD's Publicist for his Personal Ventures**

127.   In April and May 2022, Villasenor used RD to hire KMJR World to provide publicity services.

128.   Despite the fact that RD retained KMJR World, the services were not limited to RHUDE. Rather, pursuant to the same engagement, KMJR World provided publicity services to Villaseñor in his individual capacity.

129.   For example, though the Zara x Rhuigi collaboration involved only Villaseñor and not the Rhude Companies, KMJR World worked with the Zara communications and design team.

130.   Similarly, as part of its engagement with RD, Villaseñor asked KMJR World to provide services with respect to the Rhuigi x Puma collaboration, another collaboration that involved only Villaseñor and not the Rhude Companies.

131.   Once again, Villaseñor was using services paid for by RD for himself.

**IX.   Villaseñor Breaches the Books and Records Provisions of the Operating Agreements**

132.   By early 2023, when Villaseñor's misconduct became apparent, Robertson demanded answers.

133.   On February 28, 2023, Robertson sent Villaseñor and the Rhude Companies a demand letter seeking, among other things, the Rhude Companies' financial statements, books, records, and tax filings, since 2016, and any revenue streams that have been diverted from the Rhude Companies, including but not limited to those related to Zara and Puma.

134.   After nearly three months, Robertson finally received purported copies of RD's tax returns, balance sheets, and statements of profits and losses for 2017 through 2021.

135.   As of the filing of this Complaint, in violation of California law and the Rhude Companies' Operating Agreements, Villaseñor has not produced all of the requested information, including the books of account of the Rhude Companies' business, RD's financials for 2022, any information related to Rhude Holdings, or any information related to RHUDE revenue that was improperly diverted from the Rhude Companies to RMV and/or Villaseñor.

**X.   Robertson Has the Authority to Maintain this Action on Behalf of the Rhude Companies**

136.   Robertson was, and continues to be, a member of the Rhude Companies

at the time of all of the complained of transactions in this complaint.

137.   Because Villaseñor owns 80% of the Rhude Companies and is the party responsible for taking actions to harm the Rhude Companies, a demand that the Rhude Companies commence an action against Villaseñor would be futile.

138.   In any event, on February 28, 2023, Robertson sent Villaseñor and the Rhude Companies a demand letter that detailed his claims.

139.   On May 16, 2023, Robertson's counsel sent a preliminary draft of this Complaint to Yira Dirocie ("Dirocie"), who purported to be acting as general counsel for the Rhude Companies.

140.   On May 25, 2023, Ms. Dirocie informed Robertson's counsel that Villaseñor had retained personal legal counsel.

141.   On June 6, 2023, Robertson's counsel sent a revised draft of this Complaint to Villaseñor's counsel, which was a true copy of the complaint that Robertson proposed to file.

142.   This Complaint is substantially the draft sent to Villaseñor's counsel on June 6, 2023.

143.   On June 9, 2023, Robertson's counsel met and conferred with Villaseñor's counsel regarding the allegations in this Complaint.

## FIRST CAUSE OF ACTION

For Violation of California Corporations Code § 17704.10

144.   Plaintiffs repeat and reallege each of the foregoing allegations, as though fully set forth herein.

145.   Villaseñor and Robertson are both members and managers of the Rhude Companies.

146.   Under Cal. Corp. Code § 17704.10, members and managers have "the right, upon reasonable request, for purposes reasonably related to the interest of that person as a member, manager, or transferee, to each of the following: (1) To inspect and copy during normal business hours any of the records required to be maintained

pursuant to Section 17701.13. (2) To obtain in writing from the limited liability company, promptly after becoming available, a copy of the limited liability company's federal, state, and local income tax returns for each year."

147.   Section 17701.13(d) requires a limited liability company to maintain, among other things, "[c]opies of the limited liability company's federal, state, and local income tax or information returns and reports, if any, for the six most recent fiscal years," "[c]opies of the financial statement of the limited liability company, if any, for the six most recent fiscal years," and "[t]he books and records of the limited liability company as they relate to the internal affairs of the limited liability company for at least the current and past four fiscal years."

148.   Similarly, Paragraph 7.3 of the Rhude Companies' Operating Agreements requires the Rhude Companies to maintain, among other things, proper and complete books of account of the Companies' business and tax returns for the last six years.

149.   On February 28, 2023, Robertson demanded, among other things, the books and records and tax returns of the Rhude Companies from Villaseñor.

150.   After nearly three months, Robertson finally received purported copies of RD's tax returns, balance sheets, and statements of profits and losses for 2017 through 2021.

151.   As of the filing of this Complaint, in violation of California law and the Rhude Companies' Operating Agreements, Villaseñor has not produced all of the requested information, including the books of account of the Rhude Companies' business, RD's financials for 2022, any information related to Holdings, or any information related to RHUDE revenue that was improperly diverted from the Rhude Companies to RMV and/or Villaseñor.

152.   Under Cal. Corp. Code § 17704.10(f), Robertson is entitled to an order of this Court directing Villaseñor to produce all books and records and tax returns of the Rhude Companies.

153.   In addition, under Cal. Corp. Code § 17713.07(a), Robertson is entitled to $25 per day, beginning March 30, 2023, until Villaseñor fully complies.

## SECOND CAUSE OF ACTION

### For Breach of Contract

154.   Plaintiffs repeat and reallege each of the foregoing allegations, as though fully set forth herein.

155.   Robertson and Villaseñor are parties to the Rhude Companies' Operating Agreements.

156.   Robertson did everything required of him under the Operating Agreements.

157.   Villaseñor has breached the Rhude Companies Operating Agreements.

158.   Villaseñor breached his duty to produce the Rhude Companies' books and records and tax returns to Robertson upon his request.

159.   Paragraph 7.3 of the Rhude Companies' Operating Agreements requires the Rhude Companies to maintain, among other things, proper and complete books of account of the Companies' business and tax returns for the last six years.

160.   Paragraph 7.4 of the Rhude Companies' Operating Agreements provides, "Upon the written request of any Member, for purposes stated in writing and reasonably related to the interest of such Member, the Managers shall cause to be promptly delivered to such Member, at the expense of such Member, a copy of the information required to be maintained pursuant to Section 7.3 and any other information required by Section 17701.13 of the Act."

161.   On February 28, 2023, Robertson demanded that Villaseñor produce all financial statements, books, records, tax records and other relevant information including but not limited to relating to Rhude and RMV LLC since 2016 and any offshoots of the Rhude brand or other opportunities that are based on the value or otherwise derivative of the Rhude brand.

162.   In breach of his duties under the Operating Agreement, Villaseñor waited

nearly three months before producing only purported copies of RD's tax returns, balance sheets, and statements of profits and losses for 2017 through 2021.

163.   As of the filing of this Complaint, in violation of California law and the Rhude Companies' Operating Agreements, Villaseñor has not produced all of the requested information, including the books of account of the Rhude Companies' business, RD's financials for 2022, any information related to Holdings, or any information related to RHUDE revenue that was improperly diverted from the Rhude Companies to RMV and/or Villaseñor.

164.   Villaseñor also breached his duty to make distributions of Available Cash to Robertson.

165.   In 2020, 2021, and 2022, Villaseñor publicly stated RHUDE's revenue increased from $30 million to "more than $30 million" to $50 million.

166.   According to RD's tax returns, RD's revenue was $10 million in 2020 and $18 million in 2021.

167.   But, while RD's income nearly doubled, Robertson's share of the partnership income actually decreased from $322,156 in 2020 to $269,058 in 2021.

168.   Moreover, Robertson's actual distributions were just $41,657 in 2020 and $100,000 in 2021.

169.   Upon information and belief, Robertson's distributions of Available Cash should have been significantly higher.

170.   Upon information and belief, Robertson's distributions were not higher because Villaseñor was diverting the Rhude Companies' profits into his own pockets through improper channels, such as the private VIP sales, invoicing sales to RMV, and instructing customers to make payments to his personal Paypal account.

171.   Robertson cannot determine the total due because of, among other things, Villaseñor's failure to produce the books and records and fraudulent diversion of company funds into his own pockets.

172.   Because of Villaseñor's breach, Robertson has suffered damages, includ-

ing attorney fees for which he is entitled to reimbursement.

173.   Villaseñor's breaches are willful and material and have not been cured since Robertson first issued his demand letter more than thirty days ago.

174.   Accordingly, under Section 5.4 of the Operating Agreements, Robertson is entitled to remove Villaseñor from his position as Manager and, under Section 5.5, name Villaseñor's replacement.

175.   By engaging in the conduct alleged herein, Villaseñor acted with oppression, fraud, and/or malice, justifying an award of punitive damages against him.

### THIRD CAUSE OF ACTION

For Breach of Fiduciary Duty

176.   Plaintiffs repeat and reallege each of the foregoing allegations, as though fully set forth herein.

177.   Villaseñor was a Manager of the Rhude Companies and, as such, has a fiduciary relationship with the Rhude Companies and its other member, Robertson.

178.   Villaseñor knowingly acted against the interests of the Rhude Companies and Robertson by diverting company resources and opportunities to himself and in connection with the RHU collaboration with Zara.

179.   Villaseñor diverted the Rhude Companies' income to himself by charging RD for his personal expenditures, using private VIP sales, invoicing sales to RMV, and instructing customers to make payments to his personal Paypal account.

180.   Villaseñor misappropriated the Rhude Companies' resources by charging RD for the cost of goods that were ultimately sold by RMV, using RD employees to work on the RH x Wiresonly project, using RD employees to work on the Rhuigi x Puma project, and using RD employes to work on the Zara x Rhuigi project.

181.   Villaseñor misappropriated the RHUDE trademark by, among other things, entering into the collaboration with Zara using the "RHU" brand.

182.   Neither Robertson nor the Rhude Companies agreed that Villaseñor could divert resources—such as available cash or the time of RD employees—or mis-

appropriate the RHUDE trademark to himself and his personal ventures.

183.   Robertson and the Rhude Companies have been harmed by Villaseñor's misconduct in an amount to be determined at trial.

184.   In the alternative, for his breach of fiduciary duty, Villaseñor must disgorge all profits realized by his misconduct.

185.   Villaseñor's breaches of fiduciary duty also constitute fraud, embezzlement, and misappropriation.

186.   Accordingly, under Section 5.4 of the Operating Agreements, Robertson is entitled to remove Villaseñor from his position as Manager and, under Section 5.5, name Villaseñor's replacement.

187.   By engaging in the conduct alleged herein, Villaseñor acted with oppression, fraud, and/or malice, justifying an award of punitive damages against him.

## FOURTH CAUSE OF ACTION

### For Conversion

188.   Plaintiffs repeat and reallege each of the foregoing allegations, as though fully set forth herein.

189.   Upon information and belief, the Rhude Companies had large sums of Available Cash in 2020, 2021, and 2022.

190.   Robertson had a right to possess 20% of the Available Cash.

191.   Villaseñor and RMV substantially interfered with Robertson's property by knowingly or intentionally taking possession of, and preventing Robertson from having access to, his share of the Available Cash.

192.   Robertson did not consent to Villaseñor's and RMV's conduct.

193.   Robertson was harmed as a result.

194.   Villaseñor's and RMV's conduct was a substantial factor in causing Robertson's harm in an amount to be determined at trial.

195.   Robertson and the Rhude Companies have been harmed by Villaseñor's and RMV's misconduct in an amount to be determined at trial.

196.   Villaseñor and RMV's conversion also constitutes fraud, embezzlement, and misappropriation.

197.   Accordingly, under Section 5.4 of the Operating Agreements, Robertson is entitled to remove Villaseñor from his position as Manager and, under Section 5.5, name Villaseñor's replacement.

198.   By engaging in the conduct alleged herein, Villaseñor and RMV acted with oppression, fraud, and/or malice, justifying an award of punitive damages against them.

**FIFTH CAUSE OF ACTION**

For California Penal Code § 496

199.   Plaintiffs repeat and reallege each of the foregoing allegations, as though fully set forth herein.

200.   Villaseñor substantially interfered with Robertson's property by knowingly or intentionally taking possession of, and preventing Robertson from having access to, his share of the Available Cash.

201.   Villaseñor diverted the Rhude Companies' income to himself by charging RD for his personal expenditures, using private VIP sales, invoicing sales to RMV, and instructing customers to make payments to his personal Paypal account.

202.   Villaseñor misappropriated the Rhude Companies' resources by charging RD for the cost of goods that were ultimately sold by RMV, using RD employees to work on the RH x Wiresonly project, using RD employees to work Rhuigi x Puma project, and using RD employes to work on the Zara x Rhuigi project.

203.   Villaseñor misappropriated the RHUDE trademark by, among other things, entering into the collaboration with Zara using the "RHU" brand.

204.   By these illicit transactions and acts of fraud, embezzlement, and misappropriation, Villaseñor and RMV have knowingly concealed, sold, and withheld the Rhude Companies' and Robertsons's property in violation of California Penal Code § 496.

205.   As a result, the Rhude Companies and Robertson are entitled to three times the amount of their actual damages, costs of suit, and reasonable attorney fees.

## SIXTH CAUSE OF ACTION

### Federal Trade Dress Infringement, 15 U.S.C. § 1125(a)

206.   Plaintiffs repeat and reallege each of the foregoing allegations, as though fully set forth herein.

207.   Defendant Villaseñor entered into an agreement with Zara to manufacture, distribute, offer to sell, and sell to consumers clothing that infringe the RHUDE's trade dress in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

208.   The Rhude Companies have actively marketed, promoted, and continuously sold products with the RHUDE trademark such that it has acquired secondary meaning within the relevant market and among the public.

209.   With the "RHU" collaboration, Villaseñor has misappropriated the RHUDE trade dress without authorization from the Rhude Companies and continues to trade off the goodwill created and maintained by the Rhude Companies.

210.   Villaseñor's conduct is likely to cause confusion, mistake, or deception as to the source of the RHU collection and its association with the Rhude Companies, and the RHUDE brand. Plaintiffs are therefore entitled to injunctive relief under 15 U.S.C. § 1116(a).

211.   Villaseñor's use of RHUDE's trade dress has been and continues to be willful. Plaintiffs are therefore entitled to damages pursuant to 15 U.S.C. § 1117(a), including Villaseñor's profits, the Rhude Companies' actual damages, and/or the costs of this action, subject to enhancement as appropriate.

212.   Plaintiff is further entitled to its attorney fees and costs because of Villaseñor's conduct.

213.   Villaseñor's conduct also constitutes misappropriation.

214.   Accordingly, under Section 5.4 of the Operating Agreements, Robertson is entitled to remove Villaseñor from his position as Manager and, under Section 5.5,

name Villaseñor's replacement.

## SEVENTH CAUSE OF ACTION

Federal Trade Dress Dilution, 15 U.S.C. § 1125(c)

215.   Plaintiffs repeat and reallege each of the foregoing allegations, as though fully set forth herein.

216.   The Rhude Companies have extensively and continuously promoted and used the RHUDE trade dress; and the unique and distinctive design has become a prominent, well-known, and famous indicator of the origin of the RHUDE jeans.

217.   Villaseñor is making business use in commerce of trade dress that dilutes and is likely to dilute the distinctiveness of Plaintiff's trade dress by eroding the public's exclusive identification of the RHUDE with the Rhude Companies' products, tarnishing and degrading the positive associations and prestigious connotations of this trade dress, and otherwise lessening the capacity of the Rhude Companies' trade dress to identify and distinguish such goods.

218.   Villaseñor's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Rhude Companies' trade dress or to cause dilution of the Rhude Companies' trade dress, to the great and irreparable injury of the Rhude Companies.

219.   Villaseñor has caused and will continue to cause injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of the famous and distinctive RHUDE brand in violation of 15 U.S.C. § 1125(c).

220.   The Rhude Companies are therefore entitled to injunctive relief and to Villaseñor's profits, actual damages, and/or costs, subject to enhancement as appropriate, as well as reasonable attorney fees, pursuant to 15 U.S.C. §§ 1125(c), 1116 and 1117.

221.   Villaseñor's conduct also constitutes misappropriation.

222.   Accordingly, under Section 5.4 of the Operating Agreements, Robertson is entitled to remove Villaseñor from his position as Manager and, under Section 5.5,

name Villaseñor's replacement.

**EIGHTH CAUSE OF ACTION**

Federal Unfair Competition & False Designation of Origin, 15 U.S.C. § 1125(a)

223.   Plaintiffs repeat and reallege each of the foregoing allegations, as though fully set forth herein.

224.   The Rhude Companies are, and at all relevant times were, the owner of all right, title, and interest in RHUDE. The Rhude Companies have extensively and continuously promoted and used the RHUDE trade dress in commerce.

225.   The Rhude Companies' trade dress signifies to consumers that goods bearing the same unique and distinctive design are made by the Rhude Companies and are of the highest quality. The Rhude Companies have derived goodwill and value from this identification, which they have furthered through their extensive advertising and promotional efforts.

226.   As a consequence of Villaseñor's use of the Rhude Companies' trade dress, the consuming public will no longer recognize and identify Plaintiff as the single source of apparel bearing that trade dress. Villaseñor has, as alleged above, sold, and is continuing to sell apparel that is confusingly similar to the Rhude Companies'.

227.   Such conduct constitutes the use of designs tending falsely to describe the goods sold by Villaseñor and Zara, within the meaning of 15 U.S.C. § 1125(a)(1), and is likely to cause confusion, mistake or deception by the public concerning the source of origin as between the RHU goods and those of the Rhude Companies, and/or to cause confusion, mistake or deception as to the affiliation, connection, association, origin, sponsorship or approval of the RHU goods with or by the Rhude Companies or, alternatively, that the public will mistakenly believe that the RHU goods are somehow associated with the Rhude Companies' goods.

228.   Villaseñor's infringing activities are willful and conscious, and are likely to cause injury to the Rhude Companies and the public. The Rhude Companies therefore entitled to injunctive relief and to disgorge Zara's profits, actual damages, and/or

costs, subject to enhancement as appropriate, as well as reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1125(c), 1116 and 1117.

229.    Villaseñor's conduct also constitutes misappropriation.

230.    Accordingly, under Section 5.4 of the Operating Agreements, Robertson is entitled to remove Villaseñor from his position as Manager and, under Section 5.5, name Villaseñor's replacement.

**NINTH CAUSE OF ACTION**

California Trade Dress Dilution, Cal. Bus. & Prof. Code § 14200

231.    Plaintiffs repeat and reallege each of the foregoing allegations, as though fully set forth herein.

232.    The Rhude Companies have extensively and continuously promoted and used the RHUDE trade dress; and their unique and distinctive design have become a prominent, well-known, and famous indicator of the origin of RHUDE products.

233.    Villaseñor is making business use in commerce of trade dress that dilutes and is likely to dilute the distinctiveness of the Rhude Companies' trade dress by eroding the public's exclusive identification of RHUDE with the Rhude Companies, tarnishing and degrading the positive associations and prestigious connotations of this trade dress, and otherwise lessening the capacity of the Rhude Companies trade dress to identify and distinguish such goods.

234.    Villaseñor is causing and will continue to cause irreparable injury to the Rhude Companies' goodwill and business reputation, and dilution of the distinctive-ness and value of the trade dress of RHUDE in violation of California's dilution laws including, without limitation, Cal. Bus. & Prof. Code § 14200.

235.    Villaseñor acted with oppression, fraud, or malice in carrying out a scheme to trade on the Rhude Companies' trade dress. Villaseñor knew that the Rhude Companies owned and had exclusive rights in the RHUDE brand. Villaseñor's actions were taken deliberately and with full awareness of the Rhude Companies' legal rights.

236.    The Rhude Companies are therefore entitled to compensatory damages,

injunctive relief, and punitive damages, as well as its reasonable attorney fees and costs.

## TENTH CLAIM FOR RELIEF

### Unfair Competition, Cal. Bus. & Prof. Code § 17200

237.   Plaintiffs repeat and reallege each of the foregoing allegations, as though fully set forth herein.

238.   Villaseñor and Zara have been and are passing off their goods as those of the Rhude Companies, causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of the RHU products as to RHU's affiliation, connection, or association with the Rhude Companies and RHUDE, and otherwise damaging the public. Villaseñor's actions, as complained of herein, have been and will continue to be willful and intentional. Villaseñor's conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of California Business and Professions Code § 17200.

239.   Villaseñor acted with oppression, fraud, or malice in carrying out a scheme to trade on the Rhude Companies' trade dress. Villaseñor knew that the Rhude Companies owned and had exclusive rights in the RHUDE brand. Villaseñor's actions were taken deliberately and with full awareness of the Rhude Companies' legal rights.

240.   Villaseñor's unauthorized use of the Rhude Companies' trade dress has caused and is likely to cause substantial and irreparable injury to the public and to the Rhude Companies, and the Rhude Companies are entitled to injunctive relief and to recover damages, punitive damages, attorney fees, and costs.

241.   Villaseñor's conduct also constitutes misappropriation.

242.   Accordingly, under Section 5.4 of the Operating Agreements, Robertson is entitled to remove Villaseñor from his position as Manager and, under Section 5.5, name Villaseñor's replacement.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs demand judgment:

(a)    awarding Plaintiffs general and compensatory damages and/or equitable remedies in an amount to be determined at trial, but, in any event, a minimum of $10,000,000;

(b)    awarding Plaintiffs restitution and/or disgorgement to the extent of Defendant's unjust enrichment or other ill-gotten gains;

(c)    awarding Plaintiffs punitive, treble, and/or exemplary damages in an amount to be determined at trial;

(d)    awarding Plaintiffs pre-judgment and post-judgement interest at the maximum legal rate;

(e)    awarding Plaintiffs their costs and disbursements, including attorney, accountant, and expert witness fees; and

(f)    granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: June 12, 2023

Joshua L. Seifert PLLC

By: /s/ Joshua L. Seifert
Joshua L. Seifert
Attorney for *George Robertson, and on behalf of Rhude Designs, LLC, and RVRG Holdings, LLC*

28
**COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DEMAND FOR JURY TRIAL

Plaintiff George Robertson hereby demands a jury trial as to all issues so triable in the present action.

Respectfully submitted,

Dated: June 12, 2023

Joshua L. Seifert PLLC

By: /s/ Joshua L. Seifert
       Joshua L. Seifert
Attorney for *George Robertson, and on behalf of Rhude Designs, LLC, and RVRG Holdings. LLC*

**COMPLAINT**